Judge Marshall
delivered the Opinion of the Court.
Jereboam Beauchamp filed his bill in Chancery, asserting 'a superior equity under an entry for one thousand acres, made in the name of Joseph Rogers, to a tract of land held by Venable, and others claiming from him, under the elder patent of Paul Carrington, also, for one thousand acres.
The Circuit Court sustained the complainant’s entry, 'and decreed to him a considerable portion of the land field by the defendants under Carrington.
The entry of Rogers is as follows: — “1786—Septem- ** her 19th, Joseph Rogers, assignee &c. enters one thousand acres upon a pre-emption warrant, No. 710, on •“ the south side of the Rolling fork of Salt River, about •“ three miles below Muldrow’s land; to begin on the “ bank of the said fork, nearly opposite the cedar licks, “ running down the same, as it meanders, so far that “ lines at right angles to the general course thereof, “ southwardly, will include the quantity as nearly in a “ square as the situation of the land will admit of.”
*322 The identity and notoriety of the objects called for, are, in our opinion, sufficiently established; and, as according to the principles of construction heretofore adopted by this Court, the calls of the entry are sufficiently certain and special to give exact location to the land intended to be appropriated, we are also of opinion, that the entry is legal and valid. It must, therefore, if the complainant is entitled to take the benefit of it against the defendants, prevail over the elder legal title, on which .'alone they rely, for so much of the land held by them, as is covered by the patent of Rogers, and also by his entry, when laid down as it should have been surveyed, if its calls had been pursued according to their legal effect. The entry should have been surveyed by beginning at the point where, in descending the river from Muldrow’s land, a line running from the centre of the Licks (as ascertained by the Surveyor’s Report) and crossing the river, at right angles, will strike the opposite shore. It is obvious from the plat accompanying the record, that whether the entry be laid down as contended for by the complainant, or as suggested by the ’defendant, or as 'here directed by the Court, it must, in either position, include a large portion of the land within Carrington’s patent, which is also included by the survey as actually made.
Under these circumstances, as the principal controversy between the parties, so far as regards the merits of the adversary titles, relates, not to the validity, but to the exact position to be given to the entry of Rogers, and as our opinion respecting the right of the complainant to recover against the defendants, under an adversary title, renders it unnecessary to ascertain the exact position of his entry, or the precise quantity of the interference, we have deemed it useless to state more minutely the particulars either of the title set up by him, or of the proof by which it is sustained.
It appears from the pleadings and proof in the cause, 'that the defendant Venable and a certain Byrd D. Hendrick were tenants in common of the one thousand acres of land contained in Carrington’s patent; and that, before any partition-made between them, Beauchamp pur *323 chased, by executory contract, Hendrick’s portion of the land, and that being entitled to a conveyance from Hendrick, and being- also desirous to sell out his half of the land for the purpose of raising money, he, in conjunction with Venable’s agent, made a division, by running a division line, and agreeing verbally, upon the portions which should be allotted to the parties respectively. Some time after which, and in order to effectuate the division, Hendrick and Venable (the latter by his. attorney in fact) made a formal deed of partition, mutually relinquishing to each other the two portions of the land, according to the division and allotment previously made by Beauchamp, and mutually warranting the portions thus relinquished, against themselves, their heirs and all claiming under them. On the same day on which this deed of partition was acknowledged before the clerk, (which was the day after its date,) Hendrick also acknowledged a deed, bearing date on that day, conveying his portion of the land under the partition, to Beauchamp. It further appears, that about three hundred acres of the land which fell to Venable in the division, was in the adverse possession of Buckman, who held it under the entry of Rogers, and that Venable having evicted him by means of the elder title of Carrington, Buckman purchased the land from Venable, and sought his recourse against his original vendors. Beauchamp, however, had, in the mean time, urged him to enjoin the judgment in ejectment, on the ground of the superior equity derived from the entry of Rogers, and having failed in this, as well as in a similar attempt to induce Buckman’s vendors to assert their claim in equity against the patent of Carrington for the land held by Buckman and Venable, he at length purchased the entire claim derived under Roger’s entry, for- three hundred dollars, obtained a deed for it, and commenced this suit in his own name against Venable and Buckman.
Answer of deft, and matter on which he relies to prevent complainant from asserting any superior claim to the land, against him.
Venable, in his answer, questions the equitable right of Beauchamp to purchase in, and set up against him, a title adverse to that of Carrington, under which both held, and thus to disturb the partition which had been made between them; and claims the right to consider *324 him as making the purchase as trustee for the benefit of himself, as well as of those to whom Beauchamp had sold his portion of the land. This question has, also, been urged with considerable zeal and ability in this court; and we are of opinion that it is inconsistent with the principles of equity, to aid Beauchamp in the use which he is attempting to make of the adversary title thus acquired.
mon,cannot purverse claim to-exclusive ^benefit; stilHess can, pel hL^Venanu And, because of warranty, fmplied by law,, as between the parties to a partition, their relation to the title, remains the pm-tition^s before; so that parcel^can0*-not place himself in the toh^former co-tenants §• the tor.. One parcener, jpint tenant, or tenant in com-
As a general rule, one tenant in common, before partition, is not permitted to purchase in a superior outstanding claim for his own exclusive benefit, and much less to use it ior the expulsion of his co-tenant., Such a Purchase is considered, in equity, as enuring to the benefit of both, and the purchaser is entitled to confribution. (Vanhorne vs. Fonda, 5 Johns. Chy. Reports, 407.) This principle arises from the privity subsisting between parties having a common possession oi the same land, and a common interest in the safety of the . r , . ... . , , possession ot each; and it only inculcates that good faith which seems appropriate to their relative position,
But the more immediate question is, how far this privity relationship subsists after the co-tenancy itself ceases; and to what extent the same principle applies to hhe tenants after there has been an actual partition, and thus a severance of the joint possession,
By the ancient common law, joint tenants and tenants in common were not entitled to the writ of partition, that writ being allowed to parceners alone, — whence, as is said by some authors, their name was derived; and it was held that a partition between them, did not destroy the- privity. 1 Thomas’s. Coke, 726 — n. T. For which reason they had the right of aid from each other, that right being founded in privity. But the statute of 31. Henry VIII, which first gave the writ of partition to joint tenants and tenants in common, expressly provides, that after partition they shall have aid of each other to deraigne the warranty, in the same manner as was used between co-parceners. Praying in aid was a petition to the Court, to call in help from another person that “had an interest in the thing contested; it gave strength to the party praying in aid, and to the other. *325 likewise, by giving him an opportunity of avoiding a prejudice towards his own right.” 1 Jacob’s Law Dict. verb. Aid Prayer.
To every partition of land the law annexes an implied warranty, whether it is expressed in the deed or not. And tho’ this warranty is, in some respects limited, it extends to the whole land, and estops each partitioner from asserting any adverse claim to any parcel of the land allotted to another.
This provision of the statute of 31 Henry VIII., we look upon as an authoritative exposition of the relation which was understood to exist between tenants in common after partition; and although the forms of action in which it applies have passed out of use, the relation on which its allowance of aid was founded, still subsists; and there is no ground for supposing it to be less intimate, nor any reason for its being less strictly guarded, now than formerly. The aid to which a tenant was thus entitled from his former co-tenant, if it was not to be rendered, in the immediate defence of the action, was, at least, required for the purpose of deraigning the paramount warranty; that is, for proving or rendering it effectual for the protection or compensation of the party whose land was demanded. It seems inconsistent with that fidelity which the common law exacts from all persons connected in title, and with that regard which it universally pays to a warranty, to admit that a tenant— whose duty it is to unite with a former co-tenant in calling upon a common warrantor for protection or compensation — can, by being himself the demandant, place himself in hostility to the co-tenant and the common warrantor.
But a further, and, as we think, a conclusive evidence of the relation subsisting after partition, is furnished by the universal acknowledgment and assertion of the principle, that to every partition the law annexes an implied warranty. In this position, all authorities on the subject concur. 4 Cruise’s Digest, 143; Co. Lit. 384 a. 174 a. &c. In conformity with this principle, it is the common and, as we suppose, the invariable, as it is certainly the correct practice, in all deeds of partition, whether made under a decree of Chancery, or by the parties out of Court, to insert mutual warranties against the parties respectively, and those claiming under them; and it is said to be necessary, that the parties convey and assure to each other respectively. (2 Bl. Com. 323.) The implied warranty, which the law annex *326 es to a partition, is, it is true, in many respects special;. It is so, not only -with regard to the person or persons who may take advantage of it, but also, with regard to the amount of the recompense — the principle being, that the loss shall be equally borne by the parties making the partition; and the effect, that the losing party may have1 a re-partition. But although the effect of the warranty is limited as to the extent of the recompense, and the manner in which it is to be made, it is not limited as to the land warranted. It embraces the whole of the land allotted to the warrantee in the partition.
A and B are tenants in common. B. sells his interest to C, by ex-ecutory contract. A and C agree upon a partition, and deeds of partition are accordingly made by A andB (holders of the legal title,) and then B conveys his part to C, in compliance with his previous executory
As the law makes each partitioner the warrantor of the other, to the extent of the portion allotted to him,, whether there be an express warranty in the deed or not, and as no principle is better settled at common law, than that a warrantor is barred or estopped to claim against his own warranty, it seems clearly to follow, that no party to a partition can be permitted to assert an adverse title for the purpose of ousting another party from his portion, allotted to him by the same partition, though there be no express warranty in the deed.
The reciprocal rights and duties of the parties might be further illustrated; but we think it has been sufficiently shown, that even if there had been no express warranty in the deed of partition between Hendrick and Venable, each of them, being under an implied warranty, would have been precluded from evicting the other by adversary title; and the purchase by either party, of such adverse title, would, as well after partition as before, enure to the benefit of the other.
Beauchamp being in fact, as well as in equity, the real owner of Hendrick’s undivided moiety, and having considered himself so, and acted as such, in making the partition, must also be looked upon, in equity, as the real tenant in common with Venable, clothed with the same rights, and subject to the same duties, as if he had been invested with the legal title of Hendricks, with which a Court of Equity would, upon application, have invested him. And, although he is not directly bound by the express covenants contained in the deed of partition, nor a formal party to it, yet he was a party to the *327 actual partition, and is as fully bound, in equity, by the deed itself, so far as it is merely a deed of partition, confirming his own act, for his own benefit, as if he had actually executed it as a party. For, thus far, the deed was in pursuance of his own intention, and the mere consummation of his own act, by his trustee, who had no interest in the subject but to satisfy him. It is, therefore, the opinion of the Court, that whatever reciprocal obligations the law would create or imply, upon a partition between tenants in common invested with the legal title, or whatever a Court of Equity would impose upon them, as a matter of course, in perfecting a partition under its orders, the same will it consider as subsisting between Venable and Beauchamp, under the circumstances which have been stated. Beauchamp is in equity, as much bound to all the legally inherent conditions and consequences of the partition, as if he had been a formal and legal party to it. One of these inherent conditions or consequences is the implied warranty, which at least estops him from evicting the other tenant by adverse title, and binds him to re-partition in case of such eviction by a stranger. Being, in equity, a warrantor, he ought not, and will not be permitted, to assert in equity an adverse title, for the purpose of evicting Venable from his portion of the land, and thus defeating his own warranty.
contract: in equity, C shall be con* sidered as standing in B’s place precisely and in all respects — ■ subject to the same liability as warrantor to the former co-tenant A, against whom lie can set up no adverse claim to the land.
If Venable, had, after the partition, acquired the title now set up by Beauchamp, there cannot be a doubt that he would have been estopped from using it for the expulsion of Beauchamp — without his express warranty in the deed, the warranty implied upon the partition itself must have had this effect. If Beauchamp had been invested with the legal title before partition, and had thus been the formal party to it, he would as indubitably have been subject to the same estoppel; and, in our opinion, he stands, under the actual circumstances of this case, subject to the same restrictions, as his trustee, the formal party to the partition, was necessarily subjected to, by the act of making the partition. He does not, and cannot, escape these restrictions by causing the partition to be first made, and then receiving from one of *328 the parties, the legal title to a separate portion, instead 0f first receiving the title to an undivided portion, as he might have done, and then máking the partition. Being the real party in interest, and the real agent or mover of the business in all these transactions, he can derive no advantage from the mere order in which they occurred. He cannot stand as a stranger to the partition, coming in after it, but is a party to it, in fact, though not in form.
Where one of purchases'aTadverse claim to ategfo”dthebenefitofboth;and, if thus a'cquh-eí his available, his co-equity, be made liable to him, for half the price, or for a due proporthTéxient^ffhe interference. The wh^herthe pur’chase be made partitión°rAnd— The co-tenant purchase 5<of the oonflictingclaim, should be allowed, and have time given him, to elect whether his whole purthe^interference shall be for the lave aúllen aon the land for the tributed 'by'his co-tenant.
Beauchamp, therefore, being estopped in equity, from asserting the title derived under the entry of Rogers, for the recovery of the land which was allotted to Venable, his purchase, with whatever motive it was made, enures the benefit of Venable and those claiming under him; and if it was in fact beneficial to Venable, he ought, in justice, to contribute to the purchase,
We have already stated that, in our opinion, the entry 0f Rogers was valid, and that, when correctly laid down, . , ’ it would cover a large portion oi the land within the survey as actually made, and also within Carrington’s patent: which portion might have been recovered if the original holders o.f the entry had sued for it. The holders, it is true, seemed not disposed to assert their equity against Carrington’s patent, at the time when Beau-champ made his purchase; but as there was nothing to preclude them from doing so, we think the acquisition of their title was highly advantageous both to Venable and -o i Beauchamp.
seems to have been thought a matter of importance , , , . 1 ■. , by the defendants, so to fix the beginning point of the entry» as tha.t, in laying it down according to its calls, it would cover but a small part of the land occupied by them, while they paid no regard to the quantity it should be made to cover in Beauchamp’s allotment. But as uPon the principles we have settled, they would have been as much bound to bear half the loss, if Beauchamp’s land had been taken by a stranger, as he would have been to bear half the loss, if their part had been so recovered, and as a re-partition, or some conventional mode of recompense, must have been the consequence ofloss by either, it follows, that the actual measure of the *329 value of the acquisition to each, is one half of the entire value; and for the purpose of ascertaining this, it is immaterial whether the loss of land, if it had actually happened, would, in the first instance, have fallen equally on each, or more upon one than the other: it must have been bonre equally afterwards. If the price paid by Beauchamp had approached nearly to the value of the land, it would have been a matter of importance to ascertain how much of the land held under Carrington’s patent, might have been taken by the entry of Rogers, if it had continued in the hands of strangers: as otherwise, Venable, if required to pay half of the cost of the acquisition of that title, might be made to pay more than half of its real value. But it sufficiently appears, that the price given by Beauchamp for the claim, was very much less than the value of the land which was subject to loss, and would have been lost by it, if those .from whom Beauchamp purchased it had brought this suit. As therefore, Venable, as well as Beauchamp, has gained greatly by the acquisition at the price given, and will not pay the real value of what he has gained if he should be required to contribute half the purchase, and as Venable claims the benefit of this advantageous bargain made by Beauchamp, we think that, as far as he is entitled to the bargain at all, he must take it on the same terms as Beauchamp himself does.
Beauchamp, so far as appears, purchased the claim derived from Rogers, without regard to the particular quantity or position of the land which might be saved by it. If he has gained or claims any advantage from the purchase, beyond the interferenóe with Carrington’s patent, he is entitled to it, and Venable should contribute a sum bearing the same proportion to three hundred dollars, as the actual interference between the two patents bears to the whole purchase of Beauchamp. But as that purchase may have been worth nothing outside of the interference with Carrington, and as within that interference, it has been as valuable to Venable as to Beauchamp, Venable should, in that case, contribute one half of the purchase.
A co-tennnt'lravjng purchased a conflicting claim to the land, and being entitled to ■contribution from the estate of his deceased co tenant, the personal representatives of the latter should be parties to the suit.
In order to do full justice, Beauchamp should be allowed the option of relinquishing to Venable or his heirs, one half of the claim under Rogers’s entry, as purchased by him, on being paid one half of the purchase money —viz: one hundred and fifty dollars, with interest from the 25th day of November, 1815 — when he received the conveyance, or of relinquishing one half of the interference, on being paid proportionally therefor, with like interest. He should he allowed reasonable time to make this election; and the exact quantity and extent of the interference between the two patents, as well as the whole quantity purchased by Beauchamp, should be ascertained, in case he elects to relinquish only the interference. For the sum which may be found to be ■due to Beauchamp in either case, a decree should be rendered against Venable’s representatives — reserving a lien upon the land, which should be subjected to the payment, in case it should not be otherwise paid as de■creed. And Beauchamp, and all claiming under him, •should be forever barred and precluded, by the decree, from asserting any claim under the entry of Rogers, to ■any part of the land within Carrington’s patent.
Itwill be proper to make Venable’s personal representatives parties, as preparatory to such a decree.
The decree rendered upon the original bill, is reversed, and the cause remanded, for further proceedings, as herein before directed; and the decree upon the cross bill of Buckman against Venable’s representatives, for the purchase money paid by him to Venable, is also reversed, with directions, that it await the final result of the original bill, and of Beauchamp’s lien on the land, when such decree may be rendered as shall be equitable.