---

THE FRANKLIN MINING COMPANY v. O'BRIEN.

22    129
24    507
22    129
27    456

1. TENANTS IN COMMON—PURCHASE OF OUTSTANDING TITLE.

A purchase by a tenant in common of an outstanding title to the premises ordinarily inures to the common benefit of all the cotenants, and this rule applies to the purchase by a tenant in common in a mining claim of an interest in a senior conflicting location.

2. CORPORATIONS, WHAT CONSTITUTES NOTICE TO.

As a general rule a corporation is not affected with notice or knowledge of facts merely because some of its promoters had knowledge of such facts, or because some of its stockholders had notice thereof.

3. SAME.

A corporation is not charged with notice of facts known or acquired by its officer or agent in a transaction in which he acts for himself and not for the company.

4. SAME.

An equitable title is not defeated by the fact that the holders of the legal title convey to a corporation of which they were the promoters and organizers and are its directors and only stockholders. In

such case the company stands charged with the same equities as existed against its grantors and with the knowledge thereof which they possessed.

*Appeal from the District Court of Arapahoe County.*

Messrs. WOLCOTT & VAILE and Messrs. THOMAS, BRYANT & LEE, for appellant.

Messrs. RIDDELL, STARKWEATHER & DIXON and Mr. CLINTON REED, for appellee.

MR. JUSTICE CAMPBELL delivered the opinion of the court.

The appellee O'Brien, who was plaintiff below, is the owner of an undivided one fifth of the Franklin mining claim; the appellant, The Franklin Mining Company, the defendant below, is the owner of the remaining undivided four fifths thereof, the sole owner of the Dr. Franklin mining claim, and the owner of an undivided one half of the Steele mining claim, all situate in the Aspen mining district, Colorado.

The complaint in this case contains two causes of action, but as plaintiff bases his rights upon the second and upon his replication, the first cause of action, which is in the ordinary form for the recovery of the possession of real property, will not be further noticed.

The second cause of action in substance alleges that the plaintiff is the owner of an undivided one fifth of the Franklin lode and the defendant is the owner of the other four fifths therein, and they, as tenants in common, are the owners, and in the actual possession, of said claim; and that whilst they were so in possession and working and developing the mine, the defendant, on the first day of April, 1887, disregarding the plaintiff's rights, ousted him from possession of the premises in controversy and wrongfully assumed and exercised the sole and exclusive ownership thereof; that from the territory in question the defendant has extracted

and converted to its own use valuable ores, and has refused to account to the plaintiff for his share thereof.

A decree is sought, adjudging the plaintiff to be the owner of the undivided one fifth of the mining claim; an accounting is asked for, as well as a temporary injunction restraining the working of the mine, and general relief is prayed.

To this complaint an answer was filed containing eight separate and distinct defenses, the affirmative ones of which were substantially denied by the replication. The pleadings are very voluminous,—unnecessarily so,—and tend rather to obscure than to elucidate the real controversy in the case. No attempt will be made even to summarize all of these separate defenses; and while it is, among other things, contended that in the replication there is a material departure from the complaint, we are satisfied that the pleadings, as well as the evidence, fairly present for determination the legal propositions necessary for the appellee to maintain in order to justify the judgment below.

It will, however, tend to explain this controversy to state generally that the defenses set up in the answer, so far as we deem them material, are, *first*, that the defendant is, in law and in fact, the owner, and entitled to the exclusive possession, of that portion of the territory which is in conflict between these three claims, by virtue of its ownership of the Dr. Franklin lode and of an undivided one half interest in the Steele lode, each of which we shall assume, what we consider to be admitted, to be a senior and prior location to the Franklin; *second*, and as strengthening and fortifying this superior right, that in a certain adverse suit duly pending in the district court of Pitkin county between the then owners of the Franklin and the Dr. Franklin claims, a judgment was duly rendered establishing the priority of the Dr. Franklin over the Franklin claim, and that the defendant having bought into the latter after this suit was instituted, took subject to the determination of that action.

Assuming the priority, as locations, of these two claims over the Franklin lode, the replication is that the plaintiff

and defendant's grantors were tenants in common, and in actual possession, of the Franklin lode, and that arising therefrom the relations of trust were such that said grantors could not buy in and set up as against their cotenant a superior, outstanding and adverse title; that the judgment making the Dr. Franklin superior to the Franklin was rendered by consent, and for the benefit, of all the several owners of the latter; and that the defendant company, in law, is charged with full notice of the equities belonging to plaintiff. Other issues, if any, raised by the pleadings, we do not consider important.

Upon trial to the court without a jury the finding was that the allegations of the second cause of action and the matters set forth in plaintiff's replication were established, and a decree was thereupon entered, adjudging plaintiff to be the owner of an undivided one fifth interest of the territory in conflict between the Franklin and the Dr. Franklin lodes, and an undivided one tenth interest in the territory in conflict between the Steele and the Franklin lodes. From that decree the defendant is prosecuting its appeal to this court.

The evidence tended to show, and is sufficient to uphold, the finding of the trial court that the plaintiff and the grantors of the defendant were tenants in common, and, as such, in actual possession of the Franklin lode, though they did not hold under the same instrument, or from the same grantor. The only unity in their ownership was that of possession. Whilst so in possession, plaintiff's cotenants bought all of the Dr. Franklin and one half of the Steele mining claims, and would not, upon his offer so to do, permit their cotenant to contribute his portion of the purchase money, but instead refused to allow him so to do, and they now claim the exclusive ownership of the territory in conflict between these claims.

It is probably true as to some of the fractional interests, if the time when these superior rights were acquired is to be determined from the dates of the deeds of conveyance, that they were purchased by plaintiff's cotenants before they

acquired their interest in the junior Franklin lode; but as the record shows that such interests were conveyed in accordance with a parol agreement made prior to that time, and which was after the cotenancy in the Franklin existed, it is only just and fair that the date of the acquisition of such superior interest is to be determined by reference to the time when the original agreement was made, and not when the conveyances were actually executed.

Hence, it follows that as the interests were acquired, or contracted for, while the relation of cotenancy in the Franklin lode existed, the purchasers should in equity be considered as tenants in common with the plaintiff.

This brief statement of the pleadings and the evidence will sufficiently indicate, generally, the nature of this cause; but to make clear all the different questions involved, greater particularity in the statement will be observed in the appropriate place in the opinion.

To obtain a reversal of this judgment and decree the appellant relies upon the following general propositions: *First*, that the appellee O'Brien is not and never was a cotenant with the appellant, nor with any of appellant's grantors, of the land in controversy; *second*, that if the Franklin claim, as such, should be held to include the ground in controversy, nevertheless the purchase by appellant's grantors of the superior and paramount title of the Steele and the Dr. Franklin did not inure to the benefit of the appellee so as to give the latter an interest with the appellant in the lands held under such superior and paramount title; *third*, if the principle invoked by the appellee is applicable in any way to the facts of this case, his right would, in any event, be limited to a share in the individual purchases of the senior titles made by D. R. C. Brown; *fourth*, that the defendant company, formed after these various transactions occurred, took relieved of all equities that may have existed as between its grantors and plaintiff; *fifth*, that the plaintiff has failed to establish the existence of any such mining claim known as the "Franklin lode."

These general propositions, together with such subordinate matters as naturally arise in connection therewith, and the facts which the evidence and pleadings disclose, will be treated in the order followed by counsel in their able and exhaustive arguments, which have materially assisted us in our examination of the complicated case presented in the record.

The general rule, as stated by Mr. Freeman, is:

" A cotenant cannot take advantage of any defect in the common title by purchasing an outstanding title or incumbrance and asserting it against his companions in interest. The purchase is, notwithstanding his designs to the contrary, for the common benefit of all the cotenants. The legal title acquired by him is held in trust for the others, if they choose, within a reasonable time, to claim the benefit of the purchase, by contributing, or offering to contribute, their proportion of the purchase money." Freeman on Cotenancy & Partition, sec. 154.

. In support of the first proposition the argument is that each of these three mining claims is a separate and distinct thing in law; that the first of the three embraced every part of the ground within its exterior boundaries, the second only that portion within its exterior boundaries not in conflict with the first, and the third only that territory within its exterior boundaries not in conflict with either the first or second. So that when the appellee or appellant, or any of its grantors, bought an interest in the Franklin lode, it being the third in order of priority, neither purchaser got any interest in any ground in conflict, but only what was outside of the boundaries of the two senior locations; and that when the appellant, or its grantors, whilst they were cotenants with the appellee of this nonconflicting ground, bought an interest in either of the senior conflicting locations which, in law, absorbed the conflicting territory, there was not thus acquired an outstanding title or interest in the land in controversy in this case, by a tenant in common in the Franklin lode, nor was there a purchase of any outstanding or adverse

title relating to it, but a purchase merely of a title to an entirely distinct and independent entity. To put it in another form, it is contended that the owners of the Franklin are tenants in common only as to the nonconflicting territory, but not as to the ground in controversy.

If this contention be true, or the distinction logical, the entire case of the plaintiff falls, for he must recover, if at all, only upon the theory of a trust relation between the defendant's grantors and himself as tenants in common of the disputed ground, and because of their having done something to his prejudice in reference to the common property.

But this reasoning, while specious, and, in one view of the case, sound, is not applicable to the rights of the parties in this case. The rule that the appellee invokes, as was said by Mr. Justice Miller in the case of *Rothwell v. Dewees*, 2 Black (U. S.), 613, is "based on a community of interest in a common title, which created such a relation of trust and confidence between the parties, that it would be inequitable to permit one of them to do anything to the prejudice of the other, in reference to the property so situated."

Unquestionably, plaintiff and defendant's grantors were tenants in common of all the ground properly included in the Franklin location. It is true, also, that each one of these mining claims is, in law, a different thing from either of the others. Buying a title, therefore, in one of the senior claims, is not literally buying in an outstanding title of the Franklin claim; but to permit a tenant in common of the Franklin claim to buy in the title of a senior conflicting mining location, and assert it against his cotenant in the junior claim, would certainly prejudice his cotenant; for, if this could be done, the title of the latter as to the conflicting ground would thus be as effectually extinguished as if the patent to the junior location itself were obtained, with hostile intent, by the tenant and successfully asserted against the cotenant.

The reason for the application of the rule in the one case is as forcible as in the other, and to draw any such distinction

as is here claimed with respect to cotenancy in mining claims would be to sacrifice substance for shadow, and enable gross wrongs to be perpetrated, contrary to the principle which gives life to the rule.

But it is further urged, and in support of the second proposition, that the general rule, in any event, is confined to joint tenants, tenants by entireties and coparceners strictly; and to tenants in common only when they take from the same grantor and by the same instrument, or by operation of law, or when the duty is the result of an express contract between them to that effect. The expression of this exception is found in section 155 of Freeman, and is as follows:

"As the rule forbidding the acquisition of adverse titles by a cotenant, from being asserted against his companions, is always said to be based upon considerations of mutual trust and confidence supposed to be existing between the parties, the question naturally arises whether the rule is applicable where the reasons on which it is based are absent. Joint-tenants, tenants by entirety, and coparceners always hold by and under the same title. * * * Tenants in common, on the other hand, may claim under separate conveyances, and through different grantors. Their only unity is that of right to the possession of the common subject of ownership. As their connection is not necessarily so intimate as that of other cotenants, it may well be doubted whether they should always be subject to the restraints imposed upon the others. There are many cases in which the rule in regard to the acquisition of an adverse title by a cotenant is spoken of in general terms as applying to tenants in common, irrespective of their special and actual relations to one another. But an examination of the decisions clearly shows that tenants in common are not necessarily prohibited from asserting an adverse title. If their interests accrue at different times, and under different instruments, and neither has superior means of information respecting the state of the title, then either, unless he employs his cotenancy to secure an advan-

tage, may acquire and assert a superior outstanding title, especially where the cotenants are not in joint possession of the premises."

All the authorities upon this question are based upon the case of *Keech v. Sandford*, reported in volume 1 of White & Tudor's Leading Cases in Equity, at page 48, while the leading case in this country is *Van Horne v. Fonda*, 5 Johns. Ch. Rep. 388. Undoubtedly this exception to, or limitation upon, the general rule has been recognized, if the doctrine itself has not been expressly adjudicated, in the following among other cases: *Matthews v. Bliss*, 22 Pick. 48; the notes to *Keech v. Sandford, supra; Roberts v. Thorn*, 25 Tex. 728; *Rippetoe v. Dwyer*, 49 Tex. 498; *King v. Rowan*, 10 Heisk. (Tenn.) 675; *Frentz v. Klotsch*, 28 Wis. 312; *Myers v. Reed*, 17 Fed. Rep. 401; *Turner v. Sawyer*, 150 U. S. 578; *Stevens et al. v. Reynolds*, 41 N. E. Rep. (Ind.), No. 22, 931. Also, Mr. Freeman's work on Cotenancy and Partition, *supra*.

On the contrary are the following, some expressly repudiating the exception, others tacitly recognizing that no such distinction in cotenancies exists: *Rothwell v. Dewees, supra; Smiley v. Dixon*, 1 P. & W. (Pa.) 441; *Bracken v. Cooper*, 80 Ill. 221; *Montague v. Selb*, 106 Ill. 49; *Venable v. Beauchamp*, 3 Dana, 321; *Brown v. Homan*, 1 Neb. 448; *Jones v. Stanton*, 11 Mo. 433; *Picot v. Page*, 26 Mo. 398; *Titsworth v. Stout*, 49 Ill. 78; *Keller v. Auble*, 58 Pa. St. 410; *Boskowitz v. Davis*, 12 Nev. 446; Tiedeman on Real Property, sec. 252.

See, also, notes to *Venable v. Beauchamp*, 28 Am. Dec. 74, which were prepared by Mr. Freeman, the author of the work on Cotenancy and Partition, in which he seems to question the correctness of the doctrine stated by him in section 155 of the first volume of his treatise. The list might be extended much further, but the doctrine will be found fully discussed in the foregoing citations.

There are, we think, cases where the rule will not apply to tenants in common, but we need not attempt to specify what those cases are, for the case at bar falls within this

exception, which is apparent upon a consideration of the evidence pertinent to the amended fifth defense of the answer. To give in detail the facts and circumstances disclosed by the evidence under this defense would serve no useful purpose ; and we content ourselves with merely a statement of the conclusions therefrom reached by us after a careful examination, and these conclusions pertain both to the second and third propositions.

Before and during the month of August, 1886, D. R. C. Brown, for himself and Mr. Cowenhoven, and Eben Smith, for himself and others connected with him, owned, at Aspen, in the vicinity of this ground in conflict, certain mining claims. Brown then owned, also, as we have seen, five sixths of the Franklin, one half of the Steele and one sixth of the Dr. Franklin claims. An adverse suit was then pending between the owners of the Franklin and the Dr. Franklin claims, which was being pressed for trial by the latter. The attorneys of the Franklin advised their clients to settle the suit, and on August 2d, toward that end, an agreement for the purchase, at a consideration of nine thousand dollars, of the five sixths interest of the Dr. Franklin held antagonistically to the Franklin, was made by Brown and Smith, and on August 3d the deed of conveyance therefor was taken by T. G. Lyster as trustee for Brown, Smith and their associates. Thereupon, by consent, a judgment was rendered in the suit establishing the priority of the Dr. Franklin location.

Before this agreement of purchase was made, some sort of an arrangement was entered into between Brown and Smith, representing respectively themselves and their associates, whereby the aforesaid properties owned by Brown and Smith, together with the interests which Brown then owned in the three claims involved here, were to be consolidated and worked as one property, the title to which was to be taken ultimately in the name of a corporation thereafter to be organized, whose capital stock was to be entirely owned by this syndicate, in such proportion or shares as their agreement called for.

In pursuance of this object, and as a part of the scheme,—it being supposed that all antagonisms between the Franklin and the Dr. Franklin would be allayed thereby,—this purchase was made, the conveyance above mentioned executed, and this judgment entered, and subsequently, and in furtherance of this design, a conveyance from Lyster, as trustee, was made to Moffat, as trustee, who, in turn, on February 28, 1887, conveyed to the defendant company—the two latter transfers being evidenced by one instrument—one half of the Steele, five sixths of the Franklin, and all of the Dr. Franklin claims.

There is no question that such, in brief, was the general scope of this plan, and though every detail was not worked out at the time when the Dr. Franklin was purchased, yet before the conveyance to the defendant company was made the agreement in all its details was perfected, and the general scheme thus accomplished.

When this judgment was entered, neither Brown nor O'Brien was a party to the adverse suit, but the two together then owned the whole of the Franklin claim. O'Brien was absent from the state and not represented by counsel when the settlement was perfected and the judgment rendered. Before this, however, in a conversation with Smith, he was given to understand that during his absence from the state his interests in this suit would be attended to by Smith, if the occasion required, as Smith was then, as he said, about to negotiate for an interest in this same property, which, it appears, as already stated, he afterwards secured.

The relation of cotenancy between Brown and O'Brien was then unquestionably in existence as to the Franklin claim, and they were in such possession thereof as the nature of the property admitted. In equity, this relation extended to Smith and his associates, for, by the scheme of consolidation, Brown and Smith were, in equity, cotenants of the same property of which O'Brien was part owner, and so the act of Brown affecting this Franklin claim under the

scheme of consolidation equally affects all his associates, for the same trust relation attaches to all for whom Brown was then acting. The fact that Lyster, as trustee, took title to the Dr. Franklin one day before he took the title to one half of the Steele and four fifths of the Franklin, and that Moffat, as trustee, and the defendant company, as the legal owner, took title to all these three properties in one and the same deed, cannot be successfully urged here to defeat the application of this equitable rule, for, aside from the fact that the time when the parol agreement for the purchase, and not the date of the instruments of conveyance, must govern, the order of priority of the different steps by which these properties were acquired, and this scheme of consolidation thereby perfected, is immaterial, so long as the very parties whose trust relations called for the exercise of good faith toward O'Brien were the active and prime movers in all these transactions. *Venable v. Beauchamp, supra.*

If the facts do not bring this case literally within the application of the general rule, the conduct of the parties in connection with the adverse suit, together with this trust relation, brings the case within the exception, and certainly estops them from asserting this superior title against O'Brien. We are of opinion that when these superior titles were bought, the purchasers themselves supposed that O'Brien had an interest therein, and that they intended him to have the benefit thereof in such proportion as his ownership in the Franklin equitably entitled him, and their subsequent acts and conduct corroborate this conclusion. It was only when the property became valuable and was a producing mine that the attempt to exclude O'Brien was made. The securing of the Dr. Franklin claim by Smith and Brown was the result, in part, at least, of Brown's coöwnership with O'Brien of the Franklin, which enabled him to use the pendency of the adverse suit against his adversary as an aid in securing the superior title. To permit Brown, while the relation of cotenancy existed, and while he and his cotenant were in possession, so to use this relation as to get for himself that

which he might employ to his cotenant's injury, cannot be tolerated by a court of equity. *Lee et al. v. Fox et al.*, 6 Dana, 171 and 180.

Our conclusion is that Smith and Brown, in acquiring title to the Dr. Franklin claim, employed the relation of cotenancy in securing the same. As to the Steele title, Brown acquired this when he was unquestionably a tenant in common with appellee, and, for the reasons above given, he should be held as a trustee as to the same, for O'Brien's benefit in such proportion as the latter's interests in the Franklin entitle him. *Duff v. Wilson*, 72 Pa. St. 442; *Dickey's Appeal*, 73 Pa. St. 218; *Flagg v. Mann*, 2 Sumn. 520.

We have thus far considered the case as though it were between the original parties to these transactions; but the defendant insists that its rights and liabilities are different from those of its grantors. The general rule undoubtedly is that a corporation is not affected with notice or knowledge of facts merely because some of its promoters who organized the corporation had knowledge of such facts, or merely because some of its stockholders had notice; and a corporation is not charged with notice of facts known or acquired by its officer or agent in a transaction in which he acts for himself, and not for the corporation. To this effect we are referred to the case of *Davis Wagon Wheel Co. v. Davis Iron Wagon Co.*, 20 Fed. Rep. 699. Many other cases holding the same doctrine might be cited.

Upon this principle the defendant contends that even if its grantors knew of plaintiff's equities, the conveyance by them to it of this superior title vested the same in the defendant discharged of all previously existing equities.

This principle might be applicable here were it not for certain facts which, we understand, are virtually uncontroverted. The grantors of defendant, representing themselves and their associates, who were its promoters and organizers, and who now constitute its directors and are its only stockholders, we have held to be charged with plaintiff's equities. The ownership of this conflicting territory is now in precisely the same

persons that it was before the corporation acquired title, and that ownership is now represented by certificates of stock, whereas formerly it was evidenced by deeds of conveyance. In conveying to this defendant it is true that these promoters dealt in their own interests, but they conveyed to a corporation whose entire capital stock they also owned. The consideration for the transfer passed from the same parties in their capacity as shareholders of the corporation to themselves as individuals. The grantors acted not solely for themselves as individuals, but also for the corporation whose capital stock they owned, and the transaction should be regarded as one in which the same parties are grantors and grantees. We are of the opinion, therefore, that the same equities exist against this defendant as against its stockholders who were its grantors.

The point made that the plaintiff should not recover because no proof was made of the validity of the Franklin lode, we do not think tenable. By all the parties to this suit before its institution, the Franklin was treated as a valid claim, and throughout the trial the same assumption was indulged. The evidence may not be very direct as to this, but, in any event, the appellant is not authorized to urge this objection under any of the assignments of error.

Upon the whole case our conclusion is that the findings and decree of the district court are right, and, accordingly, the decree is affirmed.

*Affirmed.*