[No. 5800.]

## HARRISON v. COLE.

1. Time—Reasonable Time, depends upon the circumstances of the particular case.— (478)

Plaintiff had taken a mortgage upon an interest in lands which were in litigation. It became necessary to the perfection of the title, to provide a large sum to discharge taxes paid by the adverse claimant. Plaintiff's mortgage required the mortgagor to pay all taxes; and he was not a party to the proceeding by which the amount of the taxes were determined. Plaintiff nevertheless proposed to his co-tenant to provide his share of what was required to take care of these accrued taxes. This offer was refused and plaintiff was never informed of what was properly chargeable against his interest, though the situation required this from the co-tenant. Defendant and another co-tenant paid such taxes, and without notice to plaintiff obtained an order subrogating them to the position of the adverse co-tenant. Plaintiff had contributed to the expense of a bill of review brought by the adverse claimant, and had paid more than his share of the taxes accruing after he became interested. It was held that a delay of two years in offering to refund to the defendant his share of the disbursements was not an unreasonable delay. That plaintiff in his answer to the cross-complaint in which the defendant contested his right, claimed that he was entitled to his interest without any contribution to the defendant's disbursements did not affect the question.—(478)

2. Equity—Maxims—He who seeks equity must do equity.

One entitled to an interest in lands subject to a proportionate part of what has been paid by a co-tenant to discharge an incumbrance, is not prejudiced by the omission, in asserting his right, of an offer to do equity, or by his claim that he is not under duty to so contribute, where, upon the facts, no account having been taken, it is doubtful whether he was required to do so.—(481)

3. Tenant in Common—Purchase by One of an Outstanding Title, inures to his co-tenant, to the extent of his interest, if he

elects within a reasonable time to contribute his share of the ex-
pense necessarily incurred in the purchase, unless he has re-
pudiated the relation, or is in some manner estopped from assert-
ing his rights.—(477)

*Appeal from Denver District Court* — Hon.
SAMUEL L. CARPENTER, Judge.

Mr. A. M. STEVENSON and Mr. DANIEL PRESCOTT
for appellant.

Messrs. STUART, MURRAY & WORK, for appellee.

The facts presenting the questions involved in
this appeal are substantially as follows:

In December, 1890, one Adams instituted an
action against the surviving heirs of John W. Iliff,
deceased, to establish a trust in certain real estate
the title to which was in the name of the deceased,
upon the ground that the purchase price therefor
was paid by Adams. While this action was pend-
ing, a contract and deed were executed by Adams,
conveying to the law firm of which Stuart and Mur-
ray were members, an undivided one-fourth interest
in the land in controversy, as compensation for their
services as Adams's attorneys in that case. In
July, 1892, a decree was rendered in the action in
favor of the plaintiff, Adams. The defendants ap-
pealed to this court, where the decree was affirmed,
with the proviso that it should not take effect as a
conveyance of the land to Adams until the Iliff heirs
were reimbursed for the taxes which they and their
ancestor had paid upon the land in question, and
the cause was remanded, with directions to the trial
court to take an accounting of such taxes between
the parties as a condition precedent to the enforce-
ment of the decree.—*Warren v. Adams,* 19 Colo. 515.
This decision of the supreme court was rendered at
the January term, 1894. In July, 1894, George W.
Harrison, the appellant, loaned Adams about eight

thousand dollars, and, as security therefor, took a mortgage upon an undivided interest of Adams's remaining interest in the land. The accounting directed by this court was had, and from the judgment thereon the defendants brought the case to this court for review on error. The judgment was reversed, for reasons which it is not necessary to state, and the cause remanded, with directions to take another accounting of the taxes paid by the defendants and their ancestor, Iliff, and enter a decree that, on failure to pay the Iliff heirs the amount of taxes so ascertained within some reasonable time, to be fixed by the trial court, that the decree establishing the trust be set aside and the action of plaintiff dismissed. —*Adams v. Warren,* 27 Colo. 293. This judgment was rendered at the January term, 1900.

In December, 1900, the appellant, Harrison, in satisfaction of his mortgage from Adams, took an absolute conveyance for the land mortgaged to him from the Adams heirs, Adams having died in the meantime. In November, 1900, the Iliff heirs filed in the original action their motion for an accounting of the taxes which had been paid upon the lands in controversy, either by their ancestor or by themselves, and for a substitution of parties plaintiff because of the death of Adams, and for an order requiring the amount of such taxes found to have been paid, to be repaid to them; and, in default thereof, that the Adams interest in the premises be forfeited. Appellant Harrison was not a party to the original action, but he was notified of this proceeding. No order was entered making him a party thereto; neither was he required to plead. He took no part in the proceeding. The district court found the amount due the Iliff heirs to be $3,797.42, and ordered it to be paid within ninety days, or, in default thereof, that the original decree establishing

the trust be set aside and the action dismissed. This judgment or decree was entered on the 27th day of December, 1900.

Subsequent to the order last referred to, and before the time for the payment of the sum therein specified had expired, Stuart & Murray notified appellant Harrison that it was necessary for him to take steps, in connection with others interested in the premises, to comply with such order. None of the parties interested made any offer to comply with the order except appellant, who offered to put up his share, but he could not agree with Stuart & Murray what that should be. They wanted him to advance all the money and take all the risk, which he refused to do. He finally offered to pay one-half, but this was not accepted. Thereafter such proceedings were had in the original action that, on March 25, 1901, Stuart & Murray paid into court, for the use of the Iliff heirs, the sum found to be due them for taxes in the accounting proceedings, and an order of the district court was entered subrogating Stuart & Murray to the rights of the Iliff heirs. Appellant had no notice of these proceedings, and did not appear therein.

The mortgage given to the plaintiff, Harrison, required the mortgagor to pay the taxes assessed against the lands mortgaged. Since he became ininterested in such lands, plaintiff has paid the taxes against the premises which he claims under his deed, and on interests in the land in controversy which he does not claim, to an amount aggregating about two thousand dollars. The taxes decreed to be paid the Iliff heirs accrued prior to the date when the title to the premises was established in Adams. Plaintiff has never expressly refused to pay what might be regarded as his just proportion of such taxes since the order of subrogation. The money realized on the

mortgage given him was probably expended to some extent by Adams in carrying on the litigation against the Iliff heirs. Stuart & Murray, while not acting for plaintiff when he took the mortgage from Adams, advised him that, in their opinion, the title to the mortgaged premises was good. It does not appear that, since the subrogation proceedings, any material change in the value of the property has taken place, or that Stuart & Murray have been damaged by the failure of plaintiff to pay his proportion of the taxes found to be due the Iliff heirs in the accounting proceeding.

Subsequent to the affirmance of the judgment of the district court establishing Adams's title, the Iliff heirs commenced an action by bill of review, to set aside that judgment. Appellant was made a party to this action, and, at the request of Stuart & Murray, released three or four acres of the premises mortgaged to him by Adams, so as to permit of a conveyance of the land so released for the purpose of paying counsel to assist in defending that action. In March, 1903, appellant instituted proceedings in the district court to partition the premises. The appellees were made defendants in this action. To the petition so filed, Stuart & Murray answered, denying that plaintiff had any interest in the premises sought to be partitioned, and, by way of cross-complaint, set up the record of the judgments, decrees and orders above referred to by virtue of which they claimed to be absolute owners of such premises. Plaintiff answered this cross-complaint, stating the acquisition of his title through Adams as above narrated; admitted the judgments and records pleaded; denied that he was personally obligated to pay any part of the taxes decreed to be paid to the Iliff heirs, and made other averments which we do not think it is necessary to notice in detail, and upon this an-

swer based his title to the premises in controversy. To this answer, Stuart & Murray replied, putting in issue its affirmative averments. On the issues thus formulated, a trial was had. The testimony established the facts substantially as above stated.

The trial court concluded that plaintiff had no interest in the premises which he sought to have partitioned, and that the defendants, Stuart & Murray, were the absolute owners of such premises as against him. This judgment appears to have been based upon the grounds that plaintiff, Harrison, was a party to, and bound by, the accounting proceedings had, and was also a party to the proceedings under which Stuart & Murray were subrogated to the rights of the Iliff heirs, and bound thereby, and that, by such proceedings, Stuart & Murray acquired the entire title to the premises in controversy, subject to the right of the plaintiff to redeem whatever interest he had in such lands by offering to pay them within a reasonable time his proportionate share of the taxes found to be due the Iliff heirs, which Stuart & Murray had paid into court, and as he had not offered to pay them such share within a reasonable time, his right to do so, as well as all his interest in the premises, had terminated. Plaintiff brings the case here for review on appeal.

Mr. JUSTICE GABBERT delivered the opinion of the court:

On behalf of the appellees, it is asserted that, by the subrogation proceedings, the title to the premises in controversy became vested in Stuart & Murray. This contention is not seriously controverted by appellant, the claim on his behalf being that, in the circumstances, such title cannot be asserted as against him. Without determining the question, we suggest that it may be doubtful if

Stuart & Murray really acquired any title to the premises. By the judgments to which we have referred, the paramount title was declared to be in Adams and his grantees, subject to the right of the Iliff heirs to be reimbursed for taxes paid. The amount of such taxes was a lien upon the premises. For the purpose of enforcing this lien, the decree in the accounting proceeding provided that, if the amount found due was not paid within a specified time, the original decree establishing the trust should be set aside, and the action instituted to have the trust established dismissed. Although Stuart & Murray were subrogated to the rights of the Iliff heirs, they have never asked that the decree establishing the trust be annulled and the action dismissed. So that, as yet, it might be said they have done nothing more than pay off a lien or incumbrance on the premises.

We also suggest that it may be doubtful if plaintiff was bound by the accounting proceedings or the proceedings which led up to the order subrogating Stuart & Murray to the rights of the Iliff heirs. He appears to have been notified of the former, but it does not appear that he was ever made a party thereto. He had no notice of the latter, and was not a party thereto, neither was he a party to the original action. We make these suggestions because we do not wish to be understood as having determined that Stuart & Murray have acquired any title to the premises by virtue of the subrogation proceedings, or that plaintiff was bound by such proceedings, or those in which the accounting for taxes paid by the Iliff heirs was had. We shall assume, for the purposes of the case, however, that Stuart & Murray did acquire the title of the Iliffs, and that plaintiff was bound by the proceedings to which we have referred, and on such assumption determine if, under

the facts, plaintiff's rights in the premises are barred.

At the time when the subrogation proceedings were had, plaintiff and Stuart & Murray were cotenants in the premises. They had acquired their respective titles from a common source, namely, from Adams and his heirs. This title was defective in that it was subject to the right of the Iliff heirs to be reimbursed for taxes; so that the title vested in plaintiff and Stuart & Murray was the paramount one by virtue of which they were in, or entitled to, the possession of the premises, and, though subject to a lien, was never terminated by any action on the part of the Iliffs. We mention this because it appears to be contended on behalf of appellees that whatever rights they acquired by virtue of the subrogation proceedings, plaintiff was not entitled to any benefit in, because thereby they obtained an outstanding superior title. Possibly this contention might be correct if the title of Adams and those claiming under him had been terminated and the parties to the partition proceedings evicted; but such was not the case. Except for the title vested in Stuart & Murray through Adams, they would have had no standing upon which to base their right to be subrogated to the rights of the Iliff heirs, and the title or right they obtained thereby was but a perfection of the common title.

Cotenants stand in such a relation of mutual trust and confidence towards each other that, as a general rule, the perfection of the common title through the purchase by one of an outstanding title to the common property inures to the benefit of his cotenant, and the title so acquired is held in trust for the latter to the extent of his interest in the premises if he elects within a reasonable time to contribute his share of the expenses necessarily in-

curred in the acquisition of the outstanding title, unless he has repudiated the relation, or is estopped from claiming his rights.—*Mills v. Hart,* 24 Colo. 505;. *Franklin G. M. Co. v. O'Brien,* 22 Colo. 129; *Turner v. Sawyer,* 150 U. S. 578; Freeman on Cotenancy, secs. 154-156; *Sneed's Heirs v. Atherton,* 36 Ky. 276; Current Law, vol. 8, 2116; *Craven v. Craven,* 94 N. W. (Neb.) 604; *Asher v. Howard,* 70 S. W. (Ky.) 277; *Ryason v. Denton,* 73 N. E. (Ind.) 74; *Nalle v.·Parks,* 73.S. W. (Mo.) 596; 23 Cyc. 492; 17 Ency. 674.

Plaintiff has never repudiated the relation between himself and Stuart & Murray as cotenants, and he is not estopped from claiming to share in the benefits of the title acquired by them unless it be upon the ground that he has not elected within a reasonable time to share therein by offering to pay his just proportion of the expenses incurred by them in acquiring this title.

To the inquiry as to what is a "reasonable time," no positive answer, measured by a specific period, can be given, for the reason that, in all cases where that question is involved, each must necessarily be determined upon its own peculiar circumstances.—Freeman on Cotenancy, sec. 156.

In order to protect the common title, it was necessary to discharge the claim of the Iliff heirs in the premises, and no blame can attach to Stuart & Murray for taking the steps they did to protect the title in which they were interested. They were under no professional obligations to take these steps so far as their clients or cotenants were concerned; but the title which they claim to have acquired by the subrogation proceedings was peculiar in this respect, that it was the one which, by the litigation they had carried on as attorneys for Adams and his

heirs, they sought to extinguish, and which, by their action, destroyed that which they had established on behalf of themselves and their cotenants. They had profited by the litigation to the extent of having secured an interest in the premises. The money which the plaintiff had originally advanced Adams on the strength of the mortgage given had been expended, to some extent, at least, in carrying on litigation to establish the trust, and to this extent their interest in the premises had been benefitted. Plaintiff contributed to the expense of defending the action commenced by bill of review. Stuart & Murray profited by this expenditure. The taxes represented by the sum paid to the Iliff heirs were not taxes which plaintiff was personally obligated to pay, because of his interest in the premises. It appears that plaintiff has paid his share of taxes since he became interested in the premises; and something more, and that some of the money thus expended was for the benefit of interests which Stuart & Murray now claim. It also appears that, to some extent, at least, he relied upon the assurance of Stuart & Murray at the time he took his mortgage from Adams, that the title to the premises mortgaged was good, and that they had acted as attorneys for Adams and his heirs in establishing their title to the premises from the inception of the litigation down to the date of the accounting. When plaintiff was informed by Stuart & Murray that it was necessary to raise money to discharge the amount found due the Iliff heirs in the accounting proceedings, he expressed his willingness to pay his proportion of such sum, and did offer to pay one-half. This offer was not accepted. As between plaintiff, Stuart & Murray, and the heirs of Adams, there must necessarily be a question more or less complicated as to what taxes

and what proportion of the taxes paid by Stuart &
Murray to discharge the Iliff lien, he should pay.
Stuart & Murray were the counsel in the case, and,
in fairness to the plaintiff, they should not merely
have been content with calling upon him to pay his
proportion, before the order of subrogation, but, be-
ing familiar with the litigation, the interests of all
parties, and the circumstances under which they
were acquired, should have informed plaintiff what
amount of the sum expended by them he should pay
as properly chargeable to his interest. It does not
appear that there has been any material change in
the value of the premises since the subrogation pro-
ceedings, or that Stuart & Murray have been dam-
aged because of plaintiff's failure to pay his pro-
portion of the amount which they paid in acquiring
the interest of the Iliff heirs, or that they will not
be fully recompensed if such proportion is now paid,
with legal interest. In such circumstances, con-
siderable latitude should be allowed plaintiff, so
far as time is concerned, within which to pay his pro-
portion of the money paid out by Stuart & Murray,
and although two years elapsed between the date
of the subrogation proceedings and the time when
he commenced his suit in partition, we are of the
opinion that, taking into consideration the history
of the litigation instituted by Adams, its outcome,
the relation of the parties, and all the facts and cir-
cumstances, that such period was not an unreason-
able length of time within which plaintiff might be
permitted to reimburse Stuart & Murray by paying
them his proportion of the money expended in ac-
quiring the Iliff interest, with interest thereon.
This can be determined in the partition proceedings.

Appellees call attention to the fact that, in the
answer of plaintiff to the cross-complaint, he avers

that he was not obligated to pay any of the taxes represented by the money paid to secure the Iliff interest except by virtue of his ownership under his deed, and further claims, by his answer, that he is entitled to have his interest in the premises partitioned and set off to him free from all claims of any of the defendants and cross-complainants, and that in none of his pleadings does he offer to do equity by offering to pay his proportion of the money expended in securing the Iliff interest.   With respect to the first part of the answer referred to, we think it is sufficient to say that plaintiff has merely thereby stated that he was under no personal obligation to pay any of the taxes except such as accrued after he obtained his deed from the Adams heirs.   Merely because plaintiff may have mistaken what his rights are under the facts disclosed by the pleadings, and may, in his answer to the cross-complaint, have claimed more than he is entitled to, cannot, in the circumstances of this case, be construed as a refusal to stand his proportion of the expenses incurred by Stuart & Murray in protecting the common title.   Besides, upon an account between the parties, it might be that his interest is not chargeable with any part of the sum advanced by Stuart & Murray.   This can only be ascertained by taking an account and determining the obligations of the parties with respect thereto.   It is true plaintiff nowhere offers to pay any sum; but the case under the pleadings filed is one in equity.   The parties are all before the court, and partition of the premises upon such terms as will be equitable and just can be made.

The judgment of the district court is reversed, and the cause remanded for further proceedings, as will not be in conflict with the views expressed in

this opinion, with leave to the parties to amend their pleadings as they may be advised.

Reversed and remanded.

CHIEF JUSTICE STEELE and Mr. JUSTICE MUSSER concur.

The petition for rehearing was heard and denied by the court, en banc.

CHIEF JUSTICE CAMPBELL not participating.

Mr. JUSTICE WHITE and Mr. JUSTICE HILL dissenting. _____